JUL 9 2026 AM 9:37
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDDY A RUSSIAN,

Case No.: 8:26-cv-1960-TPB-SPF

Plaintiff,

Division: Tampa

v.

Judge: _____

ALEJANDRO AROCHA;
ZULAY NAVA a/k/a ZULY NAVA
a/k/a ZULAY NAVA DIAZ; and
Z LUXURY INTERIOR DESIGN
INC.,

Magistrate Judge:

_____

Jury Trial Demanded

Defendants.

COMPLAINT FOR PERSONAL DAMAGES, CIVIL RICO, ORGANIZED

FRAUDULENT SCHEME, MISAPPROPRIATION / EMBEZZLEMENT-TYPE

CONDUCT, FRAUD, BREACH OF ORAL AGREEMENT, AND RELATED

RELIEF

**DEMAND FOR JURY TRIAL**
**INTRODUCTION**

1. Plaintiff Freddy A Russian brings this civil action against Alejandro

Arocha, Zulay Nava a/k/a Zuly Nava a/k/a Zulay Nava Diaz, and Z Luxury Interior

Design Inc. for an alleged organized fraudulent funding, repayment, and

misappropriation scheme that caused Plaintiff severe personal damages,

business/property losses, and consequential damages.

2. This Complaint is corrected to state clearly that Plaintiff is not alleging

that the approximately $56,000 to nearly $60,000 bridge-loan-related payment

came directly from Plaintiff personally. Plaintiff alleges that those funds were paid, advanced, or caused to be paid by a company or transaction source connected to the promised $6 million bridge loan, while Defendants used that transaction and the false promise of financing to induce Plaintiff's reliance and cause Plaintiff personal harm.

3. Plaintiff's direct claim is for personal damages and losses caused by Defendants' alleged fraud, false financing representations, repayment promises, organized course of conduct, partial payments, defaults, and failure to honor the oral repayment agreement.

4. The original verbal repayment/personal damages agreement was for $150,000. Because Defendants allegedly failed to pay, delayed payment, continued promising funds, caused further losses, and made Plaintiff lose substantial property, business opportunities, credit, reputation, and financial stability, Plaintiff now seeks damages exceeding $1,000,000, plus treble damages, interest, costs, and other relief where permitted by law.

5. Plaintiff alleges that Defendants' conduct was not a simple broken promise or misunderstanding. Plaintiff alleges an organized fraudulent scheme and racketeering enterprise involving false funding representations, partial payments with agreement-related memos, repeated delays, misappropriation and

embezzlement-type misuse or retention of funds and benefits, and efforts to avoid full repayment.

6. The evidence already organized by Plaintiff includes WhatsApp messages, call logs, Zelle deposit records, payment memos referencing "Acuerdo," "Acuerdo Alejandro," "Acuerdo de pago," and similar terms, an unsigned verbal-agreement exhibit, public corporate records for Z Luxury Interior Design Inc., and public reporting concerning a separate Miami-Dade alleged investor/deposit matter involving Zulay Nava and Alejandro Arocha.

7. All allegations of fraud, organized fraudulent conduct, embezzlement-type conduct, civil theft, racketeering, and conspiracy are made as civil allegations in this pleading, not as a statement that any Defendant has been convicted in this case. Plaintiff will seek discovery, official records, bank records, communications, and witness testimony to prove these allegations.

## PARTIES

8. Plaintiff Freddy A Russian is an individual residing at 701 S Howard Ave, Tampa, Florida 33606. Plaintiff's email is farsrussian@yahoo.com, and his telephone number is 813-527-1214. Plaintiff appears pro se unless and until counsel appears.

9. Defendant Alejandro Arocha is an individual believed to be located in Florida and associated with the Miami area, including the business and service lead address 1395 Brickell Ave, Suite 800, Miami, Florida 33131. Public Florida

corporate records also list Alejandro Arocha in connection with related entities to be proven in discovery.

10. Defendant Zulay Nava, also known as Zuly Nava and Zulay Nava Diaz, is an individual believed to be located in Florida and associated with the Miami area, including the business and service lead address 1395 Brickell Ave, Suite 800, Miami, Florida 33131.

11. Defendant Z Luxury Interior Design Inc. is a Florida profit corporation, document number P19000033937, associated in public records with Zulay Nava as registered agent and officer/director and with the address 1395 Brickell Ave, Suite 800, Miami, Florida 33131. Plaintiff alleges that Z Luxury Interior Design Inc. was used, referenced, or associated with Defendants' business identity, office location, credibility, payment conduct, and/or fraud-related activities.

12. Plaintiff may amend this Complaint to add Doe defendants, related companies, account holders, employees, agents, investors, lenders, payment recipients, financial intermediaries, or other persons or entities after discovery identifies their role in the alleged scheme.

## JURISDICTION AND VENUE

13. This Court has federal-question jurisdiction under 28 U.S.C. section 1331 because Plaintiff asserts civil claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. sections 1962(c), 1962(d), and 1964(c).

14. This Court has supplemental jurisdiction over Plaintiff's related Florida-law claims under 28 U.S.C. section 1367 because those claims arise from the same nucleus of operative facts as the federal RICO claims.

15. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff alleges an original oral repayment/personal damages amount of $150,000 and additional personal, consequential, business/property, delay, and lost-opportunity damages exceeding $1,000,000.

16. Personal jurisdiction is proper in Florida because Defendants are Florida individuals and/or a Florida corporation, conducted business in Florida, directed communications and payments to Plaintiff in Florida, used Florida business addresses and accounts, and caused injury to Plaintiff in Florida.

17. Venue is alleged to be proper in the Middle District of Florida and the Tampa Division because Plaintiff resides in Tampa, received communications and partial payments in Tampa, suffered personal and financial injury in Tampa, and Defendants' conduct was directed toward Plaintiff in Tampa. Plaintiff acknowledges that Defendants appear connected to Miami-Dade and preserves the right to respond to any venue challenge or transfer motion.

18. Plaintiff seeks civil damages, restitution, treble damages where available, punitive damages where allowed, interest, costs, discovery, and all other relief permitted by law.

## FACTUAL ALLEGATIONS

19. Beginning at a date to be proven, and no later than approximately 2023, Defendants represented to Plaintiff that they had access to financing, investors, bridge-loan funds, or capital sources capable of resolving Plaintiff's business and personal financial needs.

20. Alejandro Arocha repeatedly represented that a bridge loan or financing transaction of approximately $6 million was available, ready, moving through banking channels, or otherwise close to completion.

21. Zulay Nava, Z Luxury Interior Design Inc., the 1395 Brickell Avenue office address, and related business identities were used or referenced in ways that gave the transaction an appearance of legitimacy and business credibility.

22. Plaintiff previously referenced approximately $56,000 to nearly $60,000 in commissions, fees, deposits, or related payments connected to the promised bridge-loan transaction. Plaintiff clarifies and corrects that allegation: this specific payment was not money paid directly from Plaintiff's personal funds. It was paid, advanced, or caused to be paid by a company or transaction source connected to the promised $6 million bridge loan, to be identified and proven through discovery.

23. The company or transaction-source payment is relevant because it was part of the same alleged organized funding scheme and was used by Defendants to continue inducing Plaintiff's reliance, delay, cooperation, and belief that the promised financing and later repayment would be completed.

Page 6

24. Plaintiff's own damages arise from Defendants' false financing representations, failure to complete the promised funding, failure to repay under the oral agreement, delay tactics, misappropriation or wrongful retention of benefits, and the resulting personal financial collapse and losses suffered by Plaintiff.

25. The promised financing did not close. Instead, Plaintiff received repeated excuses, changing explanations, delays, and statements concerning banks, transfers, international funds, frozen funds, meetings, supposed third parties, and supposed imminent payments.

26. By July 4, 2025, Plaintiff had written to Alejandro Arocha concerning the approximately $56,000 paid or advanced in connection with the promised $6 million bridge loan, the passage of nearly two years, and the need for the money and obligations to be resolved. Plaintiff now clarifies that the $56,000 to $60,000 amount was part of the company/transaction-source bridge-loan issue, not a personal out-of-pocket payment from Plaintiff.

27. After Plaintiff demanded resolution, Defendants made partial payments and deposits to Plaintiff. These payments support the existence of a repayment agreement, Defendants' acknowledgment of the debt, and partial performance under the verbal agreement.

28. Plaintiff alleges that, in June 2025, after Plaintiff filed bankruptcy on April 14, 2025 and after the May 15, 2025 section 341 meeting, the parties reached, discussed, agreed, or confirmed a verbal repayment and personal-damages agreement in the original amount of $150,000.

29. Plaintiff alleges that the June 2025 agreement was a post-filing personal-damages agreement intended to address Plaintiff's personal losses caused by Defendants' conduct, not to settle, release, waive, or affect any bankruptcy estate matter, creditor claim, or third-party matter. Plaintiff will make any disclosure required by law, court order, bankruptcy counsel, or trustee review, and alleges that this action is not intended to impair the bankruptcy process.

30. Plaintiff's bankruptcy timeline, as provided by Plaintiff, is: bankruptcy petition filed April 14, 2025; section 341 meeting May 15, 2025; deadline for objecting to discharge July 14, 2025; debtor discharge September 16, 2025; and deadline for filing claims December 12, 2025.

31. Defendants' partial payments were not gifts. They were partial payments toward the debt, repayment obligation, and verbal personal-damages agreement, as shown by the amount, timing, messages, and memo language.

32. Plaintiff's deposit records show Zelle payments from Zulay Nava totaling approximately $30,080 between June 20, 2025 and June 23, 2026.

33. At least 40 of the deposit entries, totaling approximately $14,760, contain agreement-related memo language, including "Acuerdo," "Acuerdo Alejandro," "Acuerdo de pago," and "Family acuerdo."

34. On or about September 22, 2025, Plaintiff wrote to Alejandro Arocha referencing an agreed priority payment of $100,000. Alejandro responded that he was coordinating it and that they would be ready the next day.

35. On or about December 7, 2025, Plaintiff asked Alejandro Arocha, "Tienes mi 100k de lo que te di para el prestamo?" Alejandro responded, "El martes hermano." Plaintiff then wrote, "Manana cerramos los 100k?" Alejandro responded, "Cerramos."

36. On or about December 7, 2025, Alejandro provided the address "1395 brickell ave" for a meeting, the same Brickell address associated with Z Luxury Interior Design Inc. and related entities in Florida public records.

37. On or about December 15, 2025, Alejandro Arocha wrote to Plaintiff in substance: "Ya te he pagado 19,000 aproximadamente puedo pagar lo demas," which Plaintiff understands as an acknowledgment that approximately $19,000 had been paid and that Alejandro could pay the rest.

38. On or about December 15, 2025, Plaintiff requested Alejandro's email to send an agreement. Alejandro had also provided an email address for the

agreement in the surrounding communications. This shows that the parties were discussing documentation of the repayment agreement.

39. On or about January 5, 2026, Plaintiff wrote that Monday, January 5, 2026 was the agreed date for Alejandro to provide "los 50k del agreement."

40. On or about January 6 and 7, 2026, after Plaintiff again demanded the scheduled $50,000, Alejandro wrote that he was coordinating the payment, that Plaintiff should receive it, and that it was already channeled.

41. Plaintiff did not receive the $50,000 payment due in January 2026. Around January 8, 2026, Plaintiff wrote that he had received only $390.

42. On or about January 17, 2026, Plaintiff wrote that he was expecting $50,000 in January, plus $100,000, less amounts already sent, no later than March 31, 2026.

43. In March 2026, Plaintiff again demanded the $50,000 payment and referenced Defendants coming to Tampa with the $50,000 near the March 31 payment period.

44. Defendants did not make the promised January and March payments and did not satisfy the outstanding balance.

45. On or about July 2, 2026, Plaintiff wrote to Alejandro Arocha: "You breached our agreement, and I have not received the payment you promised. At

this point, the entire outstanding balance is due immediately." Alejandro responded, "Ya lo estoy haciendo hermano."

46. Defendants' partial payments, agreement memos, repeated promises, and failure to perform show more than a misunderstanding. They show acknowledgment of the debt, partial performance, default, and damages.

47. Plaintiff alleges that Defendants' conduct caused Plaintiff to lose everything of substantial value in his personal financial life, including access to financing, opportunities, liquidity, credit, business/property interests, reputation, stability, time, and ability to recover, causing damages now exceeding $1,000,000.

48. Plaintiff alleges that Defendants' conduct also constituted misappropriation and embezzlement-type wrongdoing because funds, benefits, transaction value, repayment obligations, and/or money intended for a defined financing or repayment purpose were wrongfully retained, diverted, delayed, or used for Defendants' benefit instead of being used for the promised purpose or repaid.

49. Plaintiff has obtained a public Miami-Dade court record showing a Default Final Judgment in Blue Crown Management Group LLC v. Z Luxury Interior Design Inc. et al., Case No. 2023-027161-CA-01, entered against Zulay Nava and Alejandro Arocha, jointly and severally, for $554,129.01. Plaintiff alleges that this official court record, together with public reporting and the facts in

this case, supports discovery into pattern, intent, knowledge, absence of mistake, common plan, business-address use, and the use of Z Luxury Interior Design Inc. or related identities.

50. Plaintiff alleges that the separate Miami-Dade default judgment, public reporting, and the current facts support an inference of pattern, intent, knowledge, absence of mistake, common plan, and use of business entities or business addresses in connection with fraudulent representations.

51. Plaintiff alleges that Defendants used interstate wires, electronic communications, WhatsApp, Zelle, bank channels, email, phone calls, and other electronic means to transmit promises, demands, payment confirmations, excuses, partial payments, and continuing misrepresentations.

52. Plaintiff alleges that Z Luxury Interior Design Inc. should remain a defendant because public records connect the company to Zulay Nava and the 1395 Brickell Ave, Suite 800 address, and the company or office identity was part of the business presentation, credibility, meeting location, and organized course of conduct.

53. Plaintiff incorporates by reference the evidence index previously prepared from the WhatsApp export and deposit records, including the deposit CSV, the WhatsApp evidence packet, and the unsigned verbal-agreement exhibit.

Plaintiff will attach or file exhibits as permitted by the Court and after redacting private information as required.

54. Plaintiff reserves the right to amend this Complaint after discovery, after official Miami-Dade records are obtained, after subpoenaed bank/payment records identify all recipients and accounts, and after any process-server or skip-trace investigation identifies additional proper parties.

### COUNT I - CIVIL RICO, 18 U.S.C. SECTION 1962(C)
**Against Alejandro Arocha and Zulay Nava a/k/a Zuly Nava a/k/a Zulay Nava Diaz, and against Z Luxury Interior Design Inc. to the extent proven**

55. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

56. Alejandro Arocha and Zulay Nava were RICO persons within the meaning of 18 U.S.C. section 1961. Z Luxury Interior Design Inc. is alleged to have been used as part of the enterprise and, to the extent discovery shows a proper separate RICO person or participant role, as a liable RICO defendant.

57. The RICO enterprise was an association-in-fact enterprise consisting of Alejandro Arocha, Zulay Nava, Z Luxury Interior Design Inc., related entities, bank or payment accounts, office identities, electronic accounts, and other persons or entities to be identified in discovery.

58. The enterprise had a common purpose of obtaining, retaining, delaying, diverting, or misappropriating money, funds, benefits, or transaction value through

false financing representations, false repayment promises, coordinated delays, and partial payments used to prevent victims from taking immediate action.

59. The enterprise affected interstate commerce through electronic communications, banking, Zelle payments, financial transfers, phone and WhatsApp communications, interstate or international funding representations, and business activities involving Florida and other locations.

60. Defendants conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, including multiple acts of wire fraud and related fraudulent communications and transfers.

61. The predicate acts included repeated electronic communications representing that funding was available, transfers were being processed, payments were imminent, the $6 million bridge loan would close, $100,000 and $50,000 payments would be made, and the balance would be paid, when Defendants did not perform as promised.

62. The pattern included the conduct alleged against Plaintiff and, on information and belief, a separate similar Miami-Dade matter involving alleged investor/deposit misrepresentations and an approximately $180,000 deposit/guarantee.

63. Plaintiff was injured in his business or property by reason of Defendants' RICO violations, including the original $150,000 repayment/personal-damages obligation and damages exceeding $1,000,000 to be proven at trial.

64. Under 18 U.S.C. section 1964(c), Plaintiff seeks treble damages, costs, reasonable attorneys' fees if counsel appears, interest, and all other relief permitted by law.

## COUNT II - RICO CONSPIRACY, 18 U.S.C. SECTION 1962(D)
### Against All Defendants

65. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

66. Defendants agreed, expressly or impliedly, to participate in or facilitate the affairs of the enterprise through false funding representations, false payment promises, repayment delays, investor/deposit representations, and misappropriation or wrongful retention of funds and benefits.

67. Zulay Nava's Zelle payments, agreement memos, and corporate role; Alejandro Arocha's repeated promises and payment statements; and Z Luxury Interior Design Inc.'s business address and apparent role in giving legitimacy to the transactions support the existence of an agreement or common plan.

68. Defendants knew, or were deliberately indifferent to the fact, that Plaintiff was being induced to rely on false or misleading statements and that the promised repayment obligations were not being honored.

69. The conspiratorial agreement was furthered by electronic messages, partial payments, meeting/address references, excuses, and promises intended to delay Plaintiff and prevent full accountability.

70. As a direct and proximate result, Plaintiff suffered damages exceeding $1,000,000, plus additional damages to be proven at trial.

## COUNT III - FRAUDULENT MISREPRESENTATION AND FRAUDULENT INDUCEMENT
### Against All Defendants

71. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

72. Defendants made false statements and material omissions to Plaintiff concerning access to capital, a $6 million bridge loan, availability of funds, repayment, payment dates, their ability and intent to pay Plaintiff, and the legitimacy of the transaction and business structure.

73. The statements were made by WhatsApp, phone, in-person meetings, bank/payment communications, Zelle memos, business-address representations, and other means. The statements included representations in June and July 2025 about funds and transfers, September and December 2025 statements concerning $100,000, January 2026 statements concerning $50,000, and March/July 2026 statements concerning continued payment.

74. Defendants knew the statements were false or misleading when made, or made them recklessly without knowing whether they were true.

Page 16

75. Defendants intended for Plaintiff to rely on the statements by continuing to believe the promised funding and repayment would occur, delaying legal action, accepting partial payments, refraining from immediate collection or suit, preserving the relationship, and foregoing other remedies and opportunities.

76. Plaintiff reasonably relied on the statements. Plaintiff does not allege that the approximately $56,000 to $60,000 company/transaction-source payment was his personal out-of-pocket payment; rather, Plaintiff alleges that Defendants used that payment and the promised $6 million financing to induce Plaintiff's personal reliance and cause personal losses.

77. Plaintiff suffered damages exceeding $1,000,000, including the original $150,000 verbal repayment/personal damages amount, lost opportunities, delay damages, business/property losses, credit and reputational harm, emotional distress where recoverable, costs, and other consequential damages.

78. Defendants' conduct was willful, malicious, fraudulent, or in reckless disregard of Plaintiff's rights, supporting punitive damages to the extent allowed by law.

## COUNT IV - BREACH OF ORAL CONTRACT AND REPAYMENT AGREEMENT
### Against Alejandro Arocha, Zulay Nava, and Z Luxury Interior Design Inc. to the extent proven

79. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

80. Plaintiff and Defendants entered into an oral repayment and personal-damages agreement in or around the end of May 2025 and/or June/July 2025, or at other dates to be proven, under which Defendants agreed to pay Plaintiff $150,000 to resolve Plaintiff's personal damages and losses from Defendants' conduct.

81. The existence of the agreement is confirmed by Defendants' partial payments, Zelle deposit memos stating "Acuerdo," "Acuerdo Alejandro," and "Acuerdo de pago," Alejandro Arocha's written acknowledgment that approximately $19,000 had been paid and that he could pay the rest, and the messages concerning $100,000 and $50,000 payment obligations.

82. Plaintiff performed, or was excused from performance, by providing time, cooperation, forbearance, access, patience, and reliance, and by accepting partial payments while Defendants represented that payment would continue.

83. Defendants breached the agreement by failing to make the agreed January 2026 and March 2026 payments, failing to pay the $50,000 and $100,000 obligations discussed in the messages, and failing to satisfy the outstanding balance.

84. The original verbal agreement amount was $150,000, but Defendants' failure to pay, delay, continued promises, and continued harm caused Plaintiff's damages to increase to more than $1,000,000.

85. Plaintiff suffered damages exceeding $1,000,000, plus interest, costs, and other relief.

## COUNT V - PROMISSORY ESTOPPEL
### Against All Defendants

86. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

87. Defendants made clear and definite promises to Plaintiff, including promises to secure or complete the $6 million bridge loan, repay Plaintiff, make a $100,000 payment, make a $50,000 payment, continue paying the balance, and cure the default.

88. Defendants should have expected Plaintiff to rely on those promises.

89. Plaintiff did rely on those promises by delaying enforcement, accepting partial payments, attending meetings, communicating repeatedly, refraining from immediate suit, preserving the business relationship, and foregoing other opportunities or remedies.

90. Injustice can be avoided only by enforcing Defendants' promises or awarding damages sufficient to compensate Plaintiff for the original $150,000 obligation and the more than $1,000,000 in damages now alleged.

91. Plaintiff is entitled to damages, restitution, equitable relief, interest, costs, and all other relief permitted by law.

## COUNT VI - CONVERSION, MISAPPROPRIATION, AND EMBEZZLEMENT-TYPE WRONGFUL RETENTION OF FUNDS OR BENEFITS
### Against All Defendants

92. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

93. Plaintiff pleads this count as a civil claim for conversion, misappropriation, and embezzlement-type wrongful retention or diversion of funds, benefits, or transaction value. Plaintiff does not ask this Court to prosecute Defendants criminally; Plaintiff seeks civil relief for wrongful conduct.

94. Defendants obtained, retained, controlled, delayed, diverted, or used funds, benefits, payment obligations, transaction value, and/or repayment proceeds that were supposed to be used for the promised financing transaction, repayment, or Plaintiff's personal compensation.

95. Defendants had no right to keep or benefit from those funds, benefits, or repayment obligations after the promised financing failed and after Defendants agreed to repay Plaintiff and make the agreed January and March payments.

96. Defendants' partial payments and agreement-related memos confirm that the funds and benefits were not gifts and that Defendants understood there was an obligation to pay or return value to Plaintiff.

97. Plaintiff demanded payment and return of value. Defendants failed to comply fully and instead continued delaying and promising payment.

98. As a direct and proximate result, Plaintiff suffered damages exceeding $1,000,000, plus interest, costs, punitive damages where allowed, and all other relief permitted by law.

**COUNT VII - UNJUST ENRICHMENT / MONEY HAD AND RECEIVED
Against All Defendants**

99. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

100. Plaintiff conferred benefits on Defendants directly and indirectly, including reliance, time, access to transaction opportunities, forbearance from immediate suit or collection, business credibility, and the benefit of company/transaction-source funds or arrangements connected to the promised bridge-loan transaction.

101. Defendants knew of the benefits and accepted or retained them.

102. It would be inequitable for Defendants to retain the benefits without fully repaying Plaintiff and compensating him for the losses caused by their conduct.

103. Plaintiff is entitled to restitution, disgorgement, interest, costs, and other equitable relief.

**COUNT VIII - FLORIDA CIVIL THEFT, FLA. STAT. SECTION 772.11
Against All Defendants - include only after statutory demand is satisfied**

104. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

105. This count should be filed only if Plaintiff has served the written demand required by Fla. Stat. section 772.11 and either the statutory period has expired without payment or counsel confirms that the condition has been satisfied. If the demand has not been served, Plaintiff should omit this count until the requirement is met.

106. Defendants knowingly obtained, used, or endeavored to obtain or use money, funds, benefits, or repayment value with felonious intent to deprive Plaintiff of property or to appropriate the property to Defendants' own use.

107. Defendants' conduct included obtaining or benefiting from alleged false financing representations, retaining value, making partial repayments that acknowledged the obligation, and then failing to return or pay the balance despite repeated promises and deadlines.

108. Plaintiff suffered damages exceeding $1,000,000 and seeks treble damages, interest, costs, reasonable attorneys' fees if counsel appears, and all other relief available under Fla. Stat. section 772.11.

### COUNT IX - CIVIL CONSPIRACY
**Against All Defendants**

109. Plaintiff realleges and incorporates all prior paragraphs as if fully stated here.

110. Defendants agreed to act together or in concert to obtain and retain money, funds, benefits, delay, and transaction value through false or misleading

representations, payment promises, corporate/business representations, organized payment delays, and repayment tactics.

111. Defendants committed overt acts in furtherance of the conspiracy, including making false statements, sending partial payments with agreement memos, using the 1395 Brickell Ave business address, coordinating excuses and delays, using company identities, promising $100,000 and $50,000 payments, and failing to perform the promised payments.

112. The conspiracy was organized, deliberate, and repeated, not accidental or isolated.

113. Plaintiff suffered damages exceeding $1,000,000 as a direct and proximate result of Defendants' conspiracy.

114. Plaintiff is entitled to compensatory damages, punitive damages where allowed, interest, costs, and all other relief permitted by law.

## REQUEST FOR RELIEF

115. WHEREFORE, Plaintiff Freddy A Russian respectfully requests that the Court enter judgment in his favor and against Defendants Alejandro Arocha, Zulay Nava a/k/a Zuly Nava a/k/a Zulay Nava Diaz, and Z Luxury Interior Design Inc., jointly and severally where permitted by law, and award the following relief:

116. Actual damages in an amount exceeding $1,000,000, or the amount proven at trial;

117. Recovery of the original $150,000 verbal repayment/personal-damages obligation, plus additional damages caused by Defendants' failure to pay and continuing misconduct;

118. Consequential damages, delay damages, lost-opportunity damages, business/property losses, personal damages where recoverable, reputational damages where recoverable, emotional distress damages where recoverable, and other compensatory damages proven at trial;

119. Treble damages under civil RICO and, if properly demanded and proven, Florida civil theft;

120. Punitive damages to the extent permitted by law;

121. Prejudgment interest and post-judgment interest;

122. Costs of suit and reasonable attorneys' fees where authorized by statute, contract, or law;

123. Restitution, disgorgement, constructive trust, equitable accounting, or other equitable relief where supported by the evidence;

124. An order permitting discovery into related entities, accounts, communications, prior similar incidents, company or transaction-source payments, bridge-loan representations, and all persons or entities who participated in or benefited from the alleged scheme;

125. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL
Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

Freddy A Russian, Pro Se
701 S Howard Ave
Tampa, FL 33606
Email: farsrussian@yahoo.com
Phone: 813-527-1214
Date: July 9, 2026